UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                       Case No. 92-cr-81058
                                       Hon. Matthew F. Leitman

EDWIN CULP,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S
## MOTIONS FOR COMPASSIONATE RELEASE (ECF Nos. 979, 986)

Defendant Edwin Culp is a federal prisoner in the custody of the Federal Bureau of Prisons. In 1998, a jury found Culp guilty of (1) intentional killing in violation of 21 U.S.C. § 848(e)(1)(A) and (2) using or carrying a firearm in violation of 18 U.S.C. § 924(c). *See United States v. Culp*, 9 F. App'x 335, 337 (6th Cir. 2001).

On February 24, 2021, and March 19, 2021, Culp filed *pro se* motions for compassionate release from custody pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See* Mots., ECF No. 979, 986.) The Court thereafter appointed Culp counsel (*see* Order, ECF No. 984), and counsel filed a supplemental brief on Culp's behalf. (*See* Culp Supp. Br., ECF No. 1010.) Culp primarily moves for compassionate release based upon the risk that he says he faces from the COVID-19 virus while in custody. (*See id.*) Culp says that he suffers from several medical conditions, including obesity and

1

high blood pressure, that place him at "high risk" should he contract COVID-19. (*Id.*, PageID.2879.) Culp also suffers from sarcoidosis, and he insists that COVID-19 could "cause more severe symptoms" in patients, like him, with sarcoidosis. (*Id.*, PageID.2881.) Finally, Culp contends that the factors in 18 U.S.C. § 3553(a) support his release. (*See id.*, PageID.2887-2891.) The Government opposes Culp's motions. (*See* Gvt. Br., ECF No. 1014.)

The Court has carefully reviewed Culp's motions and supplemental brief and declines to grant him compassionate release. As the United States Court of Appeals for the Sixth Circuit has recently held, and as Culp himself acknowledges (*see* Culp Supp. Br., ECF No. 1010, PageID.2877-2878), "when [a prisoner] has access to the COVID-19 vaccine," the prisoner's potential exposure to the virus while in custody "does not present an extraordinary and compelling reason warranting" release. *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). *See also United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. Nov. 1, 2021) (holding district court did not abuse its discretion when it denied a motion for compassionate release based on prisoner's underlying health conditions where defendant had been fully vaccinated against COVID-19). Here, Culp was offered the Pfizer COVID-19 vaccine on December 30, 2020, but he has refused to be vaccinated. (*See* Culp Supp. Br., ECF No. 1010, PageID.2886, acknowledging Culp's "refusal to get vaccinated." *See also* Culp Medical Records, ECF No. 1015-1, PageID.3153, 3202.) Thus, because the

vaccine was made available to Culp, and he refused to be vaccinated, his potential exposure to COVID-19 while in custody "does not present an extraordinary and compelling reason warranting" his release. *Lemons*, 15 F.4th at 751.

Culp counters that a prisoner who is "unable to receive or benefit from a vaccine" may still be able to show extraordinary and compelling reasons warranting compassionate release. (Culp. Supp. Br., ECF No. 1010, PageID.2878, quoting *Lemons*, 15 F.4th at 751.) And Culp says that he is "unable to receive or benefit" from the COVID-19 vaccine due to his sarcoidosis. (*See id.*, PageID.2886-2887.) According to Culp, patients like him with sarcoidosis may not be able to fully benefit from the COVID-19 vaccine:

> Despite the FDA's approval of the current COVID-19 vaccines, "at this time there is no published data on the efficacy of mRNA vaccines in patients with sarcoidosis given the novelty of mRNA vaccination technology." Challenges of COVID-19 Vaccination in Sarcoidosis, published by US National Library of Medicine, National Institutes of Health, April 2021. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8119656 (last visited 11/5/21) (explaining that "studies examining safety and efficacy of vaccines in sarcoidosis are lacking."). Given the absence of such safety data, Culp asserts that he falls within the *Lemon* exception such that his refusal to get vaccinated should not preclude his instant request for relief.

(*Id.*, PageID.2887.)

Culp has not persuaded that the Court that he reasonably declined the COVID-19 vaccine. Culp has cited only one study for the Court that examined the efficacy

3

of the COVID-19 vaccine in patients suffering from sarcoidosis, and that study says only that "studies examining safety and efficacy of vaccines in sarcoidosis [patients] are lacking." *COVID-19 and Sarcoidosis, Readiness for Vaccination: Challenges and Opportunities*, https://www.ncbi.nlm.nih.gov/pmc/ articles/PMC8119656/. The study does not say that the vaccine is dangerous for patients with sarcoidosis. Nor does it say that patients with sarcoidosis will not benefit from the vaccine. Instead, the study "strongly recommend[s]" that patients with sarcoidosis, like Culp, take the COVID-19 vaccine:

> The safety and efficacy of COVID-19 vaccination in sarcoidosis is yet to be determined. However, in light of the severity of the COVID-19 pandemic and the increased risk of severe pulmonary outcomes in sarcoidosis, we strongly recommend that patients with sarcoidosis receive COVID-19 vaccination. Prior studies have shown that vaccines are effective and safe in patients with autoimmune diseases and in those taking immunosuppressive medications.

*Id.* Thus, Culp's own evidence does not support his refusal to take the COVID-19 vaccine. Culp has also not persuaded the Court that his sarcoidosis places him at significant risk should he contract COVID-19. *See, e.g.*, *United States v. Bressman*, 2021 WL 5448787, at *3 (D.N.J. Nov. 22, 2021) (noting that "even assuming [d]efendant currently has pulmonary sarcoidosis, this condition has not been identified by the CDC as one of the chronic lung diseases that can make an individual more likely to get severely ill from COVID-19" and denying compassionate release).

Indeed, Culp was previously infected with COVID-19, and it does not appear that he suffered any significant effects from that illness due to his sarcoidosis. (*See* Medical Records, ECF No. 1015-1, PageID.3201, noting that Culp had contracted COVID-19 but was "asymptomatic"). That history "significantly cuts against [Culp's] argument" that his sarcoidosis leaves him "extremely vulnerable to infection." *Bressman*, 2021 WL 5448787, at *3. For all of these reasons, Culp's claimed vulnerability to COVID-19 does not amount to an extraordinary and compelling circumstance justifying compassionate release. *See*, *e.g.*, *United States v. Warren*, 2021 WL 4059437, at *3 (E.D.N.Y. Sept. 7, 2021) (denying compassionate release to prisoner who suffered from sarcoidosis, had previously contracted an asymptotic case of COVID-19, and refused offered vaccination).

Finally, for the reasons explained by the Government in its opposition to Culp's motions (*see*, *e.g.*, Gvt. Br., ECF No. 1014, PageID.2970-2976), the Section 3553(a) factors also do not support releasing Culp from custody. In his motions, Culp insists that "facts of circumstances" of his trial and convictions, the "lighter sentences" received by his co-defendants, and the fact that he was a "relatively youthful offender" all support his release now. (Culp Supp. Br., ECF No. 1010, PageID.2888-2891.) But most all of the "facts and circumstances" identified by Culp were known at the time of his sentencing. And "identifying 'extraordinary and compelling reasons' [supporting compassionate release] is a task that focuses on

post-sentencing factual developments. A court must first find that the facts of the defendant's personal circumstances changed after sentencing in a way that is extraordinary and compelling, before a court is permitted to weigh (or revisit) the § 3553(a) factors" *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021) (internal quotation marks omitted; emphasis removed). Thus, factors like the defendant's "age when he committed [his offenses] and his co-defendants' sentences" are "impermissible factual considerations because those facts existed at sentencing." *Id.* And while the Court commends Culp for his hard work on rehabilitation while in custody (*see* Culp Supp. Br., ECF No. 1010, PageID.2887-2888, describing some of the approximately 60 courses Culp has completed in custody), and it acknowledges that it appears he has strong family support (*see* Ltrs. of Support, ECF Nos. 1010-5, 1017), the Court is not persuaded that the Section 3553(a) factors support releasing Culp from custody now.

Therefore, for all of the reasons explained above, Culp's motions for compassionate release (ECF Nos. 979, 986) are **DENIED**.

    **IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: December 9, 2021

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 9, 2021, by electronic means and/or ordinary mail.

                                            s/Holly A. Monda  
                                            Case Manager  
                                            (810) 341-9764